■ CILCO CEMENT CORPORATION, Appellant, v JOHN J. WHITE et al., Respondents.—In an action against two officers and directors of a corporate judgment debtor, *inter alia,* to set aside allegedly improper payments and transfers made by it, plaintiff appeals from a judgment of the Supreme Court, Queens County, dated February 20, 1976, which is in favor of defendants, after a nonjury trial. Judgment affirmed, without costs or disbursements. In our opinion, Trial Term properly determined the issues before it. Contrary to the view of the minority, we are of the opinion that the evidence adduced at the trial clearly supports the conclusion that the salary paid to Mr. John J. White as president of J. J. White Ready Mix Concrete Corporation during 1973 was not an unlawful transfer of corporate assets in violation of section 720 (subd [a], par [1], cl [B]) of the Business Corporation Law; nor was it a fraudulent conveyance of assets within the meaning of sections 273, 273-a or 276 of the Debtor and Creditor Law. J. J. White Ready Mix continued to be actively engaged in business throughout the calendar year 1973, employing eight employees and paying Mr. White his regular weekly salary, without increases from prior years. This evidence stands uncontroverted on the record, as does Mr. White's testimony that he devoted all of his time to the corporation, working 10 to 12 hours per day, six days per week. There is, moreover, no evidence that his salary was either excessive or unreasonable, or that the corporation did not receive full value in return. *Glenmore Distilleries Co. v Seideman* (267 F Supp 915), relied on by the dissenters, is distinguishable on its facts, for in that case the defunct corporation remained in business for only 11 months, while incurring a net loss of $180,000 and paying its principal officers $25,000 each in salary, $34,000 of that having been paid for services previously rendered after the corporation went out of business. Under these circumstances, the District Court (Zavatt, Ch. J.) branded the payments "fraudulent", stating, in pertinent part, that (p 919): "The compensation paid to a corporate officer must be in proportion to his ability, services and time devoted, corporate earnings and other relevant facts and circumstances.

Stearns v Dudley [76 NYS2d 106, affd. 274 App Div 1028], supra, at 127. Although the respondents claim to have devoted full-time service to Dundee [the corporation] during the short period it was in business, Dundee sustained a net loss of approximately $180,000. Not until Dundee went out of business did it pay the respondents the alleged salary payments of $34,253.32. During the eleven months of its business activity (March 1964 through January 1965), Dundee paid each respondent, monthly, a salary based upon an annual salary of [only] $12,000, i.e., $1,000 per month. * * * The court cannot find that payments of annual salaries of $25,000 to each respondent, under the circumstances, were made with fair consideration. Rather, the court finds that the payments under scrutiny were without fair consideration and are fraudulent as to Glenmore; that they were made when Dundee was insolvent and are fraudulent as to Glenmore; that the payments were fraudulent under sections 273 and 273-a of the N.Y. Debtor and Creditor Law. This is so regardless of any actual intent to defraud" (matter in brackets supplied). Clearly, that holding is inapposite to the facts at bar, where the corporate officer merely continued to draw his regular salary of long-standing, while devoting his best efforts to keeping the business "afloat". Accordingly, no impropriety has been demonstrated. We have considered appellant's remaining contentions and find them to be lacking in merit. Gulotta, P. J., Suozzi and Mollen, JJ., concur; Hopkins and Martuscello, JJ., dissent and vote to reverse the judgment and grant a new trial, limited to the issue of the propriety of the 1973 salary payments to defendant John J. White, with the following memorandum: The evidence is unclear whether the said salary payments made during the entire calendar year of 1973 were proper in view of the financial condition of the corporation at that time (see *Glenmore Distilleries Co. v Seideman,* 267 F Supp 915). The evidence is also imprecise as to the services rendered during that year.